

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

AUG 2 5 2005

CLERK, U.S DISTRICT COURT
By _____

| | |
|---|---|
| RONALD R. McARTHUR, | § |
| | § |
| Plaintiff, | § |
| | § |
| v. | §    CIVIL ACTION NO. |
| | §    5:04-CV-0068-C |
| | § |
| JO ANNE B. BARNHART, | § |
| Commissioner of Social Security, | § |
| | § |
| Defendant. | § |

## REPORT AND RECOMMENDATION

Plaintiff Ronald McArthur seeks judicial review of a decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits (DIB). The United States District Judge, pursuant to 28 U.S.C. § 636(b), referred this case to the United States Magistrate Judge for report and recommendation, proposed findings of fact and conclusions of law, and a proposed judgment. After reviewing the administrative record and the arguments of both parties, this court recommends that the District Court affirm the Commissioner's decision.

## I.    Statement of the Case

McArthur applied for DIB on February 27, 2002, alleging that he became disabled and unable to work on February 9, 2002, because severe pain in his back and sleep apnea prevented him from working. (Tr. 88, 93-95, 451-53.)

Before applying for DIB, McArthur worked at Wal-Mart as a sales associate for almost five years before Wal-Mart administration terminated him from his position because of poor customer service skills. (Tr. 42-43, 81.) He testified that he had problems "getting along with customers" and that his supervisors counseled him regarding this problem on four occasions and gave him opportunities to correct his problem but terminated him after he acted out of anger toward a customer. (Tr. 42-43, 47; *see* Tr. 155, 196.) He testified that his inability to interact appropriately with customers at Wal-Mart was anger-related and that he had problems coping with stress and dealing with problems. (Tr. 47, 52.) He also testified that standing for prolonged periods of time caused his ankles to swell, his legs to hurt, and that these problems and problems with numbness in one of his arms forced him to work only half-days during his last year of employment with Wal-Mart. (Tr. 42, 47.)

Prior to working at Wal-Mart, McArthur worked for fifteen years as a switchboard operator at a local newspaper. (Tr. 95.) He claims that because of his sleep apnea, he often fell asleep during his shift and that his employer terminated his employment with the newspaper in part because of sleeping on the job. (Tr. 42, 88.)

McArthur provided the Social Security Administration with medical records dating back to 1995. (*See* Tr. 352-53.) The records show a long history of mental impairments and diagnoses of depression and cluster "B" personality traits[1] with a history of anger outbursts,

---

[1]

Cluster "B" personality traits are present in individuals with personality disorders such Antisocial Personality Disorder, Borderline Personality Disorder, Histrionic Personality Disorder, and Narcissistic Personality Disorder. AMERICAN PSYCHIATRIC ASS'N DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS at 701-17 (4th ed. 2000) (DSM-IV). Cluster "B" personality traits include irritability, aggressiveness, and inability to control anger. *Id*. at 606, 710.

poor stress tolerance, and interpersonal problems. (Tr. 200, 353, 371, 407.) The records also show that physicians at the Veteran's Administration have provided McArthur with ongoing medical treatment and counseling for his psychological problems and have prescribed a number of antidepressants to help him cope with his depression and anger outbursts. (Tr. 239, 243, 371, 409, 427.)

The record also contains evidence from consulting physicians. On May 21, 2002, consulting psychiatrist Teresa M. Brothers, M.D., evaluated McArthur. (Tr. 203-05.) McArthur reported to Dr. Brothers that he thought of committing suicide frequently but had never attempted it and that he had been very depressed after his partner of 25 years left him and after his most recent partner died. (Tr. 203-04.) He further reported that he responded poorly to criticism, changes in routine, and stress and that his ability to concentrate was fair. (Tr. 204.)

Dr. Brothers found that McArthur's memory was intact, he seemed to have an average IQ, his fund of knowledge was average, and he had fair insight, fair judgment, and impulse control. (Tr. 204.) She diagnosed McArthur with major depression that was severe and recurrent with melancholic features and assigned him a Global Assessment of Functioning (GAF) score of 56. (Tr. 204.) An individual with a GAF score in the range assigned to McArthur would be expected to experience "moderate difficulty in social, occupational, or school functioning that might result in few friends and/or conflicts with peers or co-workers. AMERICAN PSYCHIATRIC ASS'N DIAGNOSTIC AND STATISTICAL MANUAL OF

3

MENTAL DISORDERS at 34.[2]

A few weeks later, consulting physician Charles Reynolds, M.D., examined McArthur. (Tr. 206-09.) Although McArthur's physical symptoms were the primary focus of Dr. Reynold's exam, he did diagnose McArthur with depression and noted that McArthur reported that he had suffered from depression for 20 years and was taking Prozac which he reported to be "very beneficial." (Tr. 206, 209.)

After McArthur's application was denied at the initial and reconsideration stages of the administrative process, Administrative Law Judge (ALJ) Herbert J. Green held a hearing and issued a decision. (Tr. 13-28, 37-62.) Judge Green's decision includes a summary of McArthur's medical history and an analysis according to the Commissioner's five-step sequential disability evaluation process.[3]

At the first step of the evaluation process, Judge Green determined that McArthur had not worked since the date on which he claimed he became disabled. (Tr. 17.) Based on the medical evidence he determined at steps two and three of the evaluation process that

---

[2]

A GAF score is an assessment of an individual's psychological, social, and occupational functioning based on a numerical scale and corresponding hypothetical continuum of mental health and mental illness. *Id.* at 34. The numerical scale is divided into 10 ranges starting with the range beginning with 1 and ending with 10 and ending with the range beginning at 91 and ending at 100. *Id.* at 33-34.

[3]

The ALJ must utilize a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520 (2004). The ALJ must consider (1) whether the claimant is working; (2) whether the claimant has an impairment or combination of impairments that are severe; (3) whether the claimant's impairment(s) meet a listed impairment in the regulations that would direct a presumptive finding of disability; (4) whether, based on his residual functional capacity, the claimant can perform his past work; and (5) if the claimant cannot perform his past work, whether, based on his residual functional capacity, he can perform other work in the national economy. *Id.*

McArthur had chronic low back pain with degenerative disk disease and spondylolysis, sleep apnea, dysthymia, and cluster "B" personality traits, which he found to be severe but not severe enough to meet a listed impairment in the regulations. (*Id.*)

Judge Green concluded his analysis at step four of the evaluation process finding that McArthur was not disabled and not entitled to DIB because he retained the functional capacity to perform his past work as a switchboard operator. (Tr. 21.) This conclusion was based on: (1) his finding that McArthur could perform light work with a sit/stand option that had no physical, face-to-face personal contact with the general public; (2) McArthur's description of the duties required in his job as a switchboard operator; and (3) testimony from a vocational expert in response to a hypothetical question in which Judge Green incorporated McArthur's limitations. (Tr. 21.)

The Appeals Council denied McArthur's request for review and Judge Green's decision became the Commissioner's final decision. (Tr. 4-7.) McArthur's appeal is, therefore, properly before the court. *See Higginbotham v. Barnhart*, 405 F.3d 332, 335; 337-38 (5th Cir. 2005).

McArthur raises a single point of error in his appeal; he argues that Judge Green failed to make a function-by-function assessment in determining his residual functional capacity. Specifically, he contends that Judge Green failed to follow the dictates of Social Security Ruling 96-8p because he failed to assess the non-exertional limitations that would affect his ability to perform each of the work-related functions required of a switchboard operator.

He contends Judge Green did not consider his GAF score of 56, which indicates that he would have difficulty in social or occupational functioning or medical evidence which demonstrates that he has anger management problems and difficulty with stress and that he cannot deal with the general public and customers. He contests Judge Green's conclusion that his non-exertional limitations do not limit him to working in low-stress jobs. He points out that according to the Dictionary of Occupational Titles, a switchboard operator is required to deal with the public and co-workers on a constant basis and that working as a switchboard operator necessarily involves a level of stress that would provide an opportunity for conflicts with telephone callers. He also finds fault with Judge Green's finding that he can perform jobs such as a switchboard operator so long as the job does not require face-to-face contact with the general public. He argues that the potential for conflicts with customers is not abated merely because such a position does not entail face-to-face contact with the general public and that Judge Green did not show that no face-to-face contact would reduce the stress level on an employee working as a telephone switchboard operator.

## II.   **Discussion**

At step four of the sequential disability evaluation process, the ALJ must determine whether the claimant has past relevant work and whether his impairments prevent him from performing his past relevant work. 20 C.F.R. § 404.1520(e). This determination requires the ALJ to first assess the claimant's residual functional capacity and then compare the claimant's residual functional capacity with the physical and mental demands of his past

6

work.  20 C.F.R. §§ 404.1520(f), 404.1545(a)(5)(i).  This determination may rest on either

descriptions of the past work as it is actually performed or as it is generally performed in the

national economy.  *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990) (citation omitted).

Ruling 96-8p provides guidance for these determinations and stresses the importance

of assessing a claimant's abilities on a function-by-function basis.  The Ruling defines

residual functional capacity as the claimant's "maximum remaining ability to do sustained

work activities in an ordinary work setting on a regular and continuing basis."  S.S.R. 96-8p,

1996 WL 374184 at *2.  The Ruling directs that the assessment of a claimant's residual

functional capacity is a function-by-function assessment based on all the relevant evidence

of the claimant's ability to do work-related activities.  *Id*. at *3.  The Ruling further directs

that at step four of the sequential disability evaluation process, the first determination is

whether the claimant can perform his past work as he actually performed it rather than

whether the claimant can perform the exertional categories of sedentary, light, medium,

heavy, or very heavy.  *Id*.

If the ALJ determines that the claimant cannot do his past work as he actually

performed that work, he must determine whether the claimant can perform his work as it is

generally performed in the national economy.  *Id*. at * 3-4.  Ruling 96-8p directs that in such

a case, a claimant's residual functional capacity may be expressed in terms of an exertional

work category; however, the Ruling advises that it is critical that the ALJ make a function-

by-function assessment.  Without an initial function-by-function analysis, it may not be

7

possible to determine whether the individual is able to do past relevant work as it is generally performed in the national economy because certain jobs may not require all the exertional and nonexertional demands required in a certain exertional work category. *Id.* at *3.

In other words, the mere fact that a claimant cannot perform a particular function of light work would not preclude a finding that he can perform his past work if his past work, although classified as light work, does not require the particular function the claimant cannot perform. On the other hand, a failure to make a function-by-function assessment of the claimant's limitations could result in the ALJ overlooking some of the claimant's limitations that would prevent him from performing a particular function of his past work which would require a finding that he cannot perform his past work.

McArthur essentially contends that Judge Green erred in this regard. His contention, however, must be rejected. Judge Green considered McArthur's allegations and the medical evidence regarding his mental impairments and made a function-by-function assessment of his mental capacities as he was required to do under Ruling 96-8p.

He acknowledged McArthur's claim that his past work as a switchboard operator was highly stressful; however, he found that the evidence did not support a need for low-stress jobs. (Tr. 20.) He rejected McArthur's claim that he was unable to concentrate based on evidence that he worked jigsaw puzzles, word game books, and used the computer to access the Internet. (*Id.*) He concluded that McArthur's mental impairments presented a mild degree of limitation in activities of daily living and mild difficulties in concentration, persistence, or pace. (Tr. 21.)

8

He acknowledged that Dr. Brothers assessed McArthur with a GAF score of 56, (Tr. 18 ), and implicitly incorporated limitations indicated by the score into his conclusions; he found that McArthur's mental limitations presented moderate difficulties in his ability to maintain social functioning, (Tr. 21). *See* AMERICAN    PSYCHIATRIC ASS'N DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS at 34 (An individual with a score in the range between 51 and 60 would be expected to experience "moderate difficulty in social, occupational, or school functioning that might result in few friends and/or conflicts with peers or co-workers).

Finally, he acknowledged McArthur's problems with controlling his anger and his inability to relate well with the general public by restricting his residual functional capacity to jobs that would not involve face-to-face contact with the general public. (Tr. 21.)

The foregoing determinations are correct and the evidence shows that despite his limitations, McArthur could perform the functions of his past work as a switchboard operator.

It must be acknowledged that McArthur testified that his work as a switchboard operator was highly stressful and that he did not believe he could do that type of work with his depression and problems with anger. (Tr. 48.) In addition, on March 10, 1997, he and a member of the psychiatric staff at the Veteran's Administration discussed the "stress with [his] tedious job" at the newspaper, and on September 9, 1997, he reported that he enjoyed his job at Wal-Mart because it was not "as tedious" as his job at the newspaper. (Tr. 371,

9

376.) However, McArthur also claimed that he "would doze off" while sitting in his cubicle at the newspaper's offices and that he was ultimately fired for sleeping on the job. (Tr. 42, 88.) Although tedium may produce a degree of stress, a job that allows an employee to fall asleep often enough that it becomes a problem to his employer cannot be considered "highly stressful."

Further, despite his contentions, the evidence demonstrates that McArthur does not have a significant problem with concentration. Although not cited by Judge Green, medical evidence and admissions from McArthur support this conclusion. Dr. Brothers reported that McArthur was well-oriented and alert and cooperative and that his ability to concentrate was fair. (Tr. 203-04.) McArthur admitted that he attended church weekly; was serving a two-year term as a member on the board of directors at his church; served on a building committee for his church; occasionally went to watch a movie; and played bingo with friends. (Tr. 51-52, 79.)

Finally, as Judge Green found, the evidence demonstrates that McArthur can perform the other functions and tasks required of a switchboard operator, including the stress he might encounter during his work, the contact he would necessarily have with members of the general public over the telephone, and any other contact with the general public he might have working in that position. This conlusion is supported by the fact that McArthur worked as a switchboard operator despite difficulties associated with depression, anger management, and interacting with others.

10

McArthur sought treatment for problems associated with frustration and anger management while he was working as a switchboard operator. (Tr. 81, 376-78.) In the month McArthur quit working in the position, he complained to a psychiatrist at the Veteran's Administration of longstanding problems with high mood instability, low patience, agitation, and mood swings that had worsened in the previous three to four years. (Tr. 375.) At that time he was also diagnosed with dysthymia, cluster "B" personality traits, heightened anger, and interpersonal problems. (*Id.*) Thus, McArthur worked as a switchboard operator despite the psychological problems he now contends would preclude him from performing the mental functions of that work.

The fact that a claimant was able to perform his past work despite mental impairments he later contends to be disabling is substantial evidence that supports the ALJ's finding that he can perform his past work. *See Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988) (fact that claimant worked despite mental retardation he claimed was disabling supported the Commissioner's determination that he could perform his past work); *see also Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995) (citing *Fraga v. Bowen,* 810 F.2d 1296, 1305 n.11 (5th Cir.1987)).

The Commissioner's decision is granted great deference and will be upheld unless the court cannot find substantial evidence in the record to support the Commissioner's decision or finds that the Commissioner made an error of law. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). Substantial evidence is more than a scintilla but less than a preponderance

11

and is such relevant evidence that a reasonable mind might accept as adequate to support the Commissioner's decision. *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002) (citation omitted).  If the court finds that the decision is supported by substantial evidence, it is conclusive and must be affirmed. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices exist to support the decision. *Johnson*, 864 F.2d at 343-44.

In this case, because McArthur was able to work in his position as a switchboard operator despite his anger-management problems, depression, and difficulty with interpersonal relationships, Judge Green's conclusion that McArthur retained the ability to again work as a switchboard operator is supported by substantial evidence.  Thus, Judge Green's findings at step four of the sequential disability evaluation process and his ultimate conclusion that McArthur is not disabled must be affirmed.

## III.   Recommendation

Based on the foregoing discussion of the issues, evidence and the law, this court recommends that the United States District Court affirm the Commissioner's decision and dismiss McArthur's complaint with prejudice.

## IV.   Right to Object

Pursuant to 28 U.S.C. § 636(b)(1), any party has the right to serve and file written objections to the Report and Recommendation within 10 days after being served with a copy of this document. The filing of objections is necessary to obtain de novo review by the

United States District Court. A party's failure to file written objections within 10 days shall

bar such a party, except upon grounds of plain error, from attacking on appeal the factual

findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto*

*Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc).

Dated: _____, 2005.


NANCY M. KOENIG
United States Magistrate Judge

13